UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-285-H

GARNETT RAY DUNN .                                                                                   PLAINTIFF

V.

BRIAN L. VOLTZ, WAFFLE HOUSE                                                              DEFENDANTS
INCORPORATED, d/b/a WAFFLE HOUSE
OF GEORGIA INCORPORATED,
LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, OFFICER CURTIS
LIPSEY, OFFICER MALCOLM MILLER, and
LOUISVILLE POLICE DEPARTMENT

**MEMORANDUM OPINION**

This cases arises from the failure of two Louisville Metro Police officers, Officers Malcolm Miller ("Miller") and Curtis Lipsey ("Lipsey") to intervene in an altercation between Plaintiff Garnett Ray Dunn ("Dunn") and co-defendant Brian Voltz ("Voltz"). Dunn brings a claim under 42 U.S.C. § 1983, alleging that the officers' failure to prevent Voltz from assaulting him violated his rights under the Eighth and Fourteenth Amendments, and that Louisville-Jefferson County Metro Government ("Metro Government") and the Louisville Metro Police Department ("Metro Police") are vicariously liable for the constitutional violations.[1] Dunn also brings state law negligence claims against Miller and Lipsey, as well as vicarious liability claims

---

[1] The Court has thoroughly reviewed the Amended Complaint, and Dunn does not appear to allege any federal constitutional claims against either Miller or Lipsey in either their individual or official capacities.

against Metro Government and Metro Police. Metro Government and Metro Police[2] have moved for dismissal of Dunn's claims. The Court will address each in turn.

I.

On May 16, 2004, Dunn, a 64-year old, 5'10", 150-pound man, was on the business premises of co-defendant Waffle House, Inc. ("Waffle House") when he was assaulted and viciously beaten by Voltz, a 25-year old, 6'4", 300-pound man. As a result, Dunn suffered facial fractures, internal hemorrhaging, permanent scarring and disfigurement, as well as considerable pain and suffering. Miller and Lipsey were also at Waffle House[3] during the assault and witnessed the verbal exchange leading up to it. However, they did not intervene to stop Voltz from beating Dunn. Only later did they intervene to prevent members of Dunn's party from retaliating against Voltz and members of his party. Dunn alleges that Voltz's wife is an employee of the Jefferson County government, and that Miller and Lipsey may have had a "pre-arranged" relationship of an unspecified nature with Voltz that contributed to their actions.

II.

In order to bring a claim under 42 U.S.C. § 1983, Dunn must show that (1) he was deprived of a "right, privilege, or immunity secured by the federal Constitution or law of the United States," and (2) the deprivation was caused "by a person while acting under the color of state law." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002). Here, Dunn alleges that his substantive due process rights under the Due Process Clause of the

---

[2] Metro Police has stated that, as a division of Metro Government, with no separate legal existence, it is not an entity capable of being sued. The Court need not determine Metro Police's status in order to resolve Dunn's claims against it.

[3] According to Count IV of Dunn's First Amended Complaint, Miller and Lipsey were both off-duty at the time of the incident. However, the resolution of Dunn's claims is not determined by this fact.

2

Fourteenth Amendment were violated when Miller and Lipsey did not intervene to prevent or stop Voltz's assault. However, the Due Process Clause does not impose upon the state an affirmative duty to protect its citizens against private acts of violence; rather, it places limitations on state action that denies life, liberty, or property without due process of law. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). As the Supreme Court stated,

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney*, 489 U.S. at 195. The Court further stated that the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.

Notwithstanding this general rule, the Supreme Court recognizes that the state does have an affirmative duty to protect an individual against private acts of violence where a "special relationship" exists between the state and the private person, such as when the state takes a person into custody. *Id. See also Jones v. Union Cty.*, 296 F.3d 417, 428 (6th Cir. 2002). Further, in *DeShaney* the Court left open the possibility that the state may be liable for private acts despite the absence of a special relationship: the Court stated that "[w]hile the State may have been aware of the dangers that [a young child] faced in the free world, it played no part in their creation, nor did it do anything to render [the child] more vulnerable to them." *DeShaney*, 489 U.S. at 201. The Sixth Circuit has interpreted this language to mean that

> [W]hile the state generally does not shoulder an affirmative duty to protect its

>citizens from private acts of violence, it may not cause or greatly increase the risk
>of harm to its citizens without due process of law through its own affirmative acts.

*Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). Liability under this "state-created danger" theory requires an affirmative act by the state[4] that either creates or increases the risk that an individual will be exposed to private acts of violence. *Kallstrom*, 136 F.3d at 1066, citing *Sargi v. Kent City Bd. Of Educ.*, 70 F.3d 897, 912-13 (6th Cir. 1995). The Seventh Circuit aptly explained the rationale for this rule – "[i]f the state puts a man in a position of danger from a private person and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

Neither exception to the general rule is applicable here. Dunn has not alleged a special relationship between himself and the officers, and it is clear that no such relationship existed. That the officers were present in the same Waffle House as Dunn does not create a constitutional duty on their part to protect him from harm. To be sure, the purposeful inaction of Miller and Lipsey as Dunn was attacked is offensive and inexplicable. But it does not rise to the level of a due process violation under our cases.

Dunn would like the opportunity to prove that Miller and Lipsey had a relationship of some sort with Voltz and that together they were part of a plot leading to the assault. However, the presence of bad motives or acquiescence with perpetrators, without more, does not create a due process violation. *See, e.g.*, *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir. 1990) (plaintiff's allegation that police chief's personal relationship with woman's estranged husband caused him

---

[4] Metro Government and Metro Police do not dispute that Miller and Lipsey were state actors.

4

to fail to act to perform his duties as chief was insufficient to state constitutional violation). Thus, the Court cannot see any set of facts that would support a claim for a due process violation. In each of the cases cited by Dunn, the state actor took an affirmative action to create or increase the risk of harm to the plaintiff. *See Kneipp v. Tedder*, 95 F.3d 1199 (3d. Cir. 1996) (police officers increased risk of harm to a visibly inebriated woman when they separated her from her escort and then released her to walk home unaided); *Estate of Rosenbaum by Plotkin v. City of New York*, 975 F. Supp. 206 (E.D.N.Y. 1997) (police potentially increased danger to plaintiffs of harm from private actors when they implemented a flawed plan to enforce control in the midst of riots). Here, neither Miller and Lipsey's failure to stop the assault nor their agreement to do so would constitute affirmative conduct that could violate Dunn's Fourteenth Amendment rights. Dunn does not allege other actions or inaction.

Since Dunn's Fourteenth Amendment rights were not violated, Metro Government and Metro Police cannot be vicariously liable for Miller and Lipsey's failure to act. *See, e.g.*, *Los Angeles v. Heller*, 475 U.S. 796 (1986) (If a person has suffered no constitutional injury at the hands of an individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is irrelevant); *See also*, *Herman v. Cook*, 240 F. Supp. 2d 626, 632 (W.D. Ky. 2003) (where there was no constitutional violation by police officers, there could be no vicarious liability for their actions on the part of the city).

### III.

Dunn also alleges a violation of his Eighth Amendment right to protection against cruel and unusual punishment. However, this claim fails for multiple reasons. First, as discussed above, the state took no action against Dunn – indeed, his entire claim is based on the failure of

Miller and Lipsey to come to his aid.  Second, the Eighth Amendment has no application before a formal adjudication of guilt.  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983), quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72, n. 40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . ").  Dunn does not allege, and plainly was not, criminally prosecuted, found guilty, and then sentenced to or subjected to cruel and unusual punishment by the state.  As such, there was no violation of his Eighth Amendment rights, and his claim must be dismissed.

IV.

Dunn also brings negligence and vicarious liability claims under Kentucky state law against Metro Government and Metro Police.  Dunn bases these claims on allegations that Miller and Lipsey failed to prevent the assault by Voltz and that Metro Government and Metro Police failed to adequately train and/or supervise Miller and Lipsey.  In *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 392 (Ky. 2001), the Kentucky Supreme Court stated:

> In order for a claim to be actionable in negligence, there must be the existence of a duty and unless a special relationship was present, there is no duty owing from any of the police officers to [an accident victim] to protect her from crime or accident.  In order for the special relationship to exist, two conditions are required: 1) the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor.

Here, it is clear that Dunn was never in police custody or otherwise restrained at the time of the assault.  Additionally, there was no state action because Voltz, a private party, caused the injury to Dunn.  As the court noted in *City of Florence, supra*,

> We agree with the officers that imposing a duty in this case in the absence of a special relationship . . . would be tantamount to establishing a universal duty of

6

> care on the police to prevent any third party harm to each and every citizen with whom they have contact regardless of how slight the interaction or brief the duration.

*City of Florence*, 38 S.W.3d at 393. Dunn does not allege any basis on which he could show that Miller and Lipsey owed him a duty of protection, and without a duty, there can be no claim for negligence. Accordingly, as Dunn cannot establish negligence on the part of Miller and Lipsey, he cannot establish vicarious liability or negligent supervision or training claims against Metro Government or Metro Police, and those claims must be dismissed.[5]

V.

For all of the foregoing reasons, all of Dunn's claims against Metro Government and Metro Police are dismissed. The trial date in this case is not until October of 2006. The only remaining claims are those purely under state law against the individual Defendants, Voltz, Miller and Lipsey, and against Waffle House. From the foregoing analysis, it would appear that some of those claims will be difficult to sustain. However, the Court has not thoroughly reviewed all of the issues pertinent to those claims. Therefore, the Court will decline to retain supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law claims and those claims will be dismissed without prejudice. Plaintiffs may pursue those claims in state court if they so choose.

---

[5] Dunn's punitive damage claim in Count V of the First Amended Complaint fails as a matter of course.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record